IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

MOHAMAD MASTOU,

    Plaintiff,

v.      Civil Action No. 1:17-cv-00196

MIDDLE EAST BROADCASTING
NETWORKS, INC.,

    Defendant.

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment.

This case arises from the termination of Plaintiff Mohamad Mastou's employment by Defendant Middle East Broadcasting Networks, Inc. ("MBN"). MBN is a U.S. government-funded news organization that focuses on reporting news to the Middle East. Plaintiff was a reporter for MBN from February 2013 until his termination in December 2015. MBN's stated reason for the termination was that Plaintiff committed plagiarism.

Plaintiff was diagnosed with PTSD in December 2014, as a result of personal traumatic experiences in Syria and witnessing by video a bombing incident in Syria that resulted in the death of his father and brother. Plaintiff did not inform MBN of his

PTSD diagnosis until March 2015, at which time he requested and was granted twelve weeks of leave pursuant to the Family Medical Leave Act to seek treatment for his PTSD.

When Plaintiff returned to work in June 2015, he was initially assigned the overnight shift and later the afternoon shift. However, in September, he was reassigned to work the morning shift, beginning at 4 AM. Plaintiff alleges that the shift change was difficult for him to comply with due to his difficulty sleeping as a result of his PTSD and the fact that his medications caused him to have difficulty waking and resulted in grogginess. Additionally, Plaintiff alleges that the morning shift exposed him to more news regarding the then ongoing civil war in Syria, which triggered his PTSD symptoms.

Even before Plaintiff's shift was changed (and before he was diagnosed with PTSD), Plaintiff exhibited deficiencies in his job performance. Appraisals of his performance included allegations of repeated tardiness, failure to communicate with management, and poor work quality. He was disciplined in January 2015 for tardiness, at which time it was documented that he had arrived late to work on more than 50 occasions.

After his shift change, Plaintiff requested as an accommodation to be reassigned to a later shift. This request was followed by a documented interactive process during which MBN explored options for an accommodation and attempted to

communicate with Plaintiff's health care providers. One month after Plaintiff requested the accommodation, while the interactive process was still ongoing, Plaintiff filed a charge of discrimination against MBN with the EEOC. On December 14, 2015, after receiving information verifying Plaintiff's condition from Plaintiff's health care providers, MBN decided to grant Plaintiff's accommodation request. However, a few days after the decision was made, Plaintiff was terminated for plagiarism.

The plagiarism incident arose when Plaintiff was assigned to research and write a news story for the technology section of MBN's digital platform. Plaintiff put together a story by cutting and pasting portions of two Arabic-language articles he found on the internet. He submitted the article to his editor and did not identify the two websites from which he had copied the paragraphs. After investigating, Plaintiff's editor discovered that the article was plagiarized. Plaintiff was then terminated on December 21, 2015, and told that the reason for the termination was plagiarism.

Plaintiff filed this suit against MBN in February 2017, alleging that MBN violated provisions of the Americans with Disabilities Act by discriminating against Plaintiff on the basis of his disability. Plaintiff alleged that his conduct with regard to the article he submitted in December was "a common

occurrence among reporters at MBN" and therefore that the plagiarism charge was pretextual. On October 6, 2017, after completion of discovery, MBN filed its Motion for Summary Judgment.

Under Federal Rule of Civil Procedure 56, a court should grant summary judgment if the pleadings and evidence show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made, the opposing party has the burden to show that a genuine dispute of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The Court finds there is no genuine dispute of material fact and this case is ripe for summary judgment.

Plaintiff did not specify in his complaint what theory of discrimination he is pursuing under the ADA, listing as his only count that MBN "discriminated against Plaintiff based on his disability in violation of the Americans with Disabilities Act." In his Opposition to MBN's Motion for Summary Judgment, Plaintiff argued three theories to show that MBN violated the

ADA: discriminatory termination, retaliation, and discriminatory failure to accommodate his disability. The Court holds that each of these theories fail as a matter of law.

In order to establish a prima facie claim of discriminatory termination under the ADA, a plaintiff must establish four elements: (1) that the plaintiff qualifies under the ADA as an individual with a disability; (2) that the plaintiff was discharged; (3) that the plaintiff was meeting his employer's legitimate performance expectations at the time of the discharge; and (4) that the circumstances surrounding the discharge lead to a reasonable inference of discrimination. Reynolds v. American Nat. Red Cross, 701 F.3d 143, 150 (4th Cir. 2012).

In this case, Plaintiff has failed to present evidence to establish that he was meeting his employer's legitimate performance expectations or that his termination occurred under circumstances that would lead to a reasonable inference of discrimination. The record in this case shows instead that Plaintiff's employment was marked with multiple instances of poor performance. Plaintiff was cited by supervisors for tardiness, insubordination, and failure to communicate with management on multiple occasions, and was disciplined for tardiness in January 2015, more than two months before he reported his disability. Additionally, the record shows that

Plaintiff violated MBN's policy against plagiarism by submitting an article that he had created by combining portions of two other articles he found on the internet. Due to these documented examples of poor performance, Plaintiff has not established that he was meeting his employer's legitimate expectations at the time of his discharge.

Furthermore, Plaintiff has not established that the circumstances of the discharge permit a reasonable inference of discrimination. The mere fact that Plaintiff had requested an accommodation and MBN had been engaged in the process of approving an appropriate accommodation for two months prior to the discharge does not establish a reasonable inference of discrimination. This is particularly true in light of the fact that MBN had decided to grant Plaintiff's accommodation request on December 14, one week before Plaintiff was discharged. Thus, Plaintiff has failed to establish a prima facie case of discriminatory termination under the ADA.

Plaintiff's retaliation claim also fails as a matter of law. Three elements are required to establish a prima facie case of retaliation under the ADA: (1) that the plaintiff engaged in protected conduct; (2) that the defendant took adverse action against the plaintiff; and (3) that the adverse action was causally connected to the protected conduct. Adams v. Anne Arundel County Public Schools, 789 F.3d 422, 429 (4th Cir.

2015). The third element requires the plaintiff to meet a high "but for" causation standard: the causal link must be so strong that the discharge would not have occurred but for the plaintiff's protected activity. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013); Lacasses v. Didlake, Inc., 194 F. Supp. 3d 494, 503 (E.D. Va. 2016).

Plaintiff asserts that he engaged in a protected activity when he requested an accommodation and later filed an EEOC charge against MBN, and that MBN took adverse action against him by terminating him. However, Plaintiff has not established that the termination was causally connected to his accommodation request or EEOC charge. The evidence presented shows that MBN had a legitimate, non-discriminatory reason for terminating Plaintiff. Not only did Plaintiff have a history of poor performance even predating his diagnosis of PTSD, but the evidence demonstrates that Plaintiff also engaged in plagiarism in violation of MBN's policy. Plaintiff has failed to present evidence sufficient to establish that the stated reason for his termination was pretextual. Although he alleges his conduct was in line with the common practices of MBN reporters, he failed to present evidence to support this, or to rebut the evidence presented by MBN that demonstrates the contrary. Plaintiff's retaliation claim therefore fails as a matter of law.

Finally, Plaintiff's discriminatory failure to accommodate claim also fails as a matter of law. To establish this claim, Plaintiff must show that (1) he has a disability, (2) he is able to perform the essential functions of his job, or would be able to do so with a reasonable accommodation, and (3) if a reasonable accommodation is required, that the employer failed to reasonably accommodate the employee's disability. See Myers v. Hose, 50 F.3d 278, 281-82 (4th Cir. 1995). Plaintiff fails to establish these elements because the record demonstrates that MBN ultimately did provide Plaintiff with an accommodation after a robust interactive process.

Even assuming that Plaintiff's requested accommodation would have enabled him to perform the essential functions of his job, Plaintiff has failed to establish that the accommodation was unreasonably denied. MBN engaged in a well-documented, good faith interactive process that ultimately resulted in MBN granting Plaintiff his desired accommodation before his eventual termination due to the unrelated plagiarism incident. The record indicates that MBN sought input from Plaintiff's health care providers in order to better understand his need for accommodation, and any delay in granting the accommodation was caused by the failure of Plaintiff's health care providers to promptly respond to MBN's request. Despite the delay, MBN communicated with Plaintiff regularly throughout the process,

and sought his assistance in obtaining information from his health care providers. Plaintiff has provided no evidence of discriminatory intent, and therefore there is no basis for finding that the delay was unreasonable. Furthermore, the record indicates that as early as October 30, only a little over a month after Plaintiff initially requested an accommodation, MBN indicated it was willing to offer an accommodation that Plaintiff's doctor had agreed was reasonable, but Plaintiff was not satisfied with the offered accommodation and therefore rejected it. Finally, once MBN had received the information it had requested from Plaintiff's health care providers, it decided to provide the very accommodation Plaintiff had requested. Thus, Plaintiff cannot establish that MBN failed to provide a reasonable accommodation.

For the foregoing reasons, this Court finds that summary judgment should be granted in favor of Defendant. An appropriate order shall issue.

CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
November 11, 2017